2019 PA Super 148

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PIERRE CULSOIR | : | |
| | : | |
| Appellant | : | No. 1228 EDA 2017 |

Appeal from the Judgment of Sentence March 21, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0007947-2013

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

OPINION BY PANELLA, J.                          **FILED MAY 06, 2019**

In this appeal, we address the appellate consequences of a bifurcated sentencing proceeding. Appellant, Pierre Culsoir, filed a single notice of appeal from sentences imposed over seven months apart, but listed at a single trial court docket. This bifurcated sentencing raises the question of whether Culsoir's appeal is timely. Further, Culsoir challenges the bifurcated nature of his sentencing, as well as the court's refusal to allow him to withdraw his guilty plea. We conclude that Culsoir's appeal is timely and affirm the judgment of sentence.

Culsoir pled guilty to unlawful contact with a minor, corruption of a minor, and indecent assault of a minor, all at the same trial court docket number on August 17, 2016. On that same date, the trial court sentenced Culsoir only on the charge of indecent assault; sentencing was deferred on

the remaining charges. Shortly thereafter, Culsoir filed a motion to withdraw his guilty plea, which the court denied. Over six months later, on March 21, 2017, the court denied Culsoir's motion for extraordinary relief and imposed sentence on the remaining charges. Thirty days later, Culsoir filed this appeal.

We must first address whether Culsoir's appeal is timely with respect to the judgment of sentence imposed for indecent assault in August 2016. We may raise jurisdictional issues *sua sponte*. **See Commonwealth v. Davis**, 176 A.3d 869, 873 (Pa. Super. 2017). Pennsylvania's Rules of Appellate Procedure place great importance on the concept of "final orders" to establish jurisdiction to hear an appeal. Generally, "an appeal may be taken as of right from any final order of a … trial court." Pa.R.A.P. 341(a). A "final order" is defined, in relevant part, as "any order that … disposes of all claims and of all parties." Pa.R.A.P. 341(b).

The preference for limiting appellate review to final orders "not only prevents piecemeal appeals and protracted litigation, but also promotes judicial accuracy." **Commonwealth v. Bowers**, 185 A.3d 358, 362 (Pa. Super. 2018) (citation omitted). Accuracy is enhanced when the appellate court can "consider the claim in the context of a complete adjudication and a fully developed record." **Id**.

In the civil context, Rule 341 has been consistently applied by concluding that orders dismissing fewer than all claims or all parties are not final orders. **See Spuglio v. Cugini**, 818 A.2d 1286, 1287 (Pa. Super. 2003)

(finding two orders from which plaintiff appealed were interlocutory and unappealable, where orders sustained preliminary objections and disposed of some but not all of the parties or claims); *see also Brickman Group, Ltd. v. CGU Ins. Co.*, 829 A.2d 1160, 1163 (Pa. Super. 2003) (finding trial court's order granting summary judgment in favor of defendant was not a final and appealable order where defendant's third-party complaint remained pending at the time of notice of appeal); *Prelude, Inc. v. Jorcyk*, 695 A.2d 422, 423 (Pa. Super. 1997) (finding trial court order which dismissed claims against three of five defendants named in complaint, but did not extend to two remaining defendants, was not final appealable order);

We are presented with a similar procedural posture, albeit in a criminal context. We have not found any decision addressing a bifurcated sentencing procedure such as the one at issue here. Arguably, our precedent addressing other interlocutory appeals in the criminal context are distinguishable due to the importance our jurisprudence attaches to the judgment of sentence. *See*, *e.g.*, *Commonwealth v. Parker*, 173 A.3d 294, 296 (Pa. Super. 2017) ("The general rule in criminal cases is that a defendant may appeal only from a final judgment of sentence, and an appeal from any prior order or judgment will be quashed").

Here, the court entered a judgment of sentence on Culsoir's conviction for indecent assault. Normally, a judgment of sentence would have constituted a final order. *See* Pa.R.A.P. 301(a)(2) (stating that in the absence of a post-

sentence motion, "a judgment of sentence is appealable upon the imposition of sentence in open court"). However, Rule 301 must be read in conjunction with Rule 341. **See Commonwealth v. Walker**, 185 A.3d 969, 976 (Pa. 2018) ("A single rule should not be read in a vacuum, especially where there is a relationship between different rules"). Further, we must give effect to every provision to every rule, if possible. **See id**.

Rules 301 and 341 are both contained in Chapter 3 of the Rules of Appellate Procedure, entitled "Orders from which Appeals may be Taken." They are both obviously relevant to the jurisdictional issue before us. If we were to read Rule 301(a)(2) as providing that *any* judgment of sentence is immediately appealable, it would render the definition of a final order contained in Rule 341(b)(1) irrelevant. We therefore cannot construe Rule 301(a)(2) in this manner.

The more appropriate construction of Rule 301(a) is to acknowledge it focuses on the timeliness of an appeal. For most civil matters, an order is not appealable until it is entered on the appropriate docket. **See** Pa.R.A.P. 301(a)(1). In contrast, Rule 301(a)(2) provides that a judgment of sentence is "appealable upon the imposition of sentence in open court," absent the timely filing of post-sentence motions.

If Rule 301(a) is narrowly construed as identifying when an otherwise final order is appealable, Rule 341(a)'s definition of final order remains intact. And applying Rule 341(a)'s definition of final order to this appeal, we conclude

that since Culsoir's charges issued from the same docket, any final order must dispose of all three charges. The judgment of sentence for indecent assault did not dispose of the remaining charges on the same docket. Any appeal filed before the disposal of those charges would have been premature and interlocutory.

As Culsoir filed his appeal from the order that disposed of all remaining claims and parties at the relevant docket number, he has successfully secured review of all previous, non-final orders at that docket number. **See Commonwealth v. Walker**, 185 A.3d 969, 977 n.4 (Pa. 2018). We therefore turn to Culsoir's issues on appeal.

Culsoir challenges the bifurcated nature of his sentencing, as well as the court's refusal to allow him to withdraw his guilty plea. Specifically, Culsoir argues his motion to withdraw a guilty plea should have been subject to a less demanding pre-sentence standard due to the unusual bifurcated sentencing. Culsoir has waived any claim that the court erred in bifurcating the sentencing. Moreover, we find Culsoir is due no relief under either standard.

The absence of a timely objection during sentencing results in an issue being waived for appellate review. **See Commonwealth v. May**, 887 A.2d 750, 761 (Pa. 2005); **see also Commonwealth v. Tha**, 64 A.3d 704, 713 (Pa. Super. 2013) (finding this Court has long held that failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal). Culsoir never objected to the bifurcated sentencing in the trial court.

He has therefore waived any objection he had to the bifurcated sentencing procedure.

Although there is no absolute right to withdraw a guilty plea, when a request to withdraw a plea is made prior to sentencing, the trial court has discretion to permit withdrawal of the plea. **See** Pa.R.Crim.P. 591(A).

> The proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

**Commonwealth v. Johnson-Daniels**, 167 A.3d 17, 24 (Pa. Super. 2017) (citation omitted).

Similarly, the decision to allow a defendant to withdraw a plea post-sentence is a matter that rests within the sound discretion of the trial court. **See Commonwealth v. Muhammad**, 794 A.2d 378, 382-383 (Pa. Super. 2002). Moreover, a request to withdraw a guilty plea after sentencing is subject to higher scrutiny "since courts strive to discourage [the] entry of guilty pleas as sentence-testing devices." **Commonwealth v. Flick**, 802 A.2d 620, 623 (Pa. Super. 2002) (citation omitted). Therefore, in order to withdraw a guilty plea after the imposition of sentence, a defendant must make a showing of prejudice which resulted in a "manifest injustice." **Id**. (citation omitted). A defendant meets this burden only if he can demonstrate that his guilty plea was entered involuntarily, unknowingly, or unintelligently. **See Commonwealth v. Stork**, 737 A.2d 789, 790 (Pa. Super. 1999).

Once a defendant enters a guilty plea, it is presumed that he was aware of what he was doing. *See id*. at 790. Consequently, defendants are bound by statements they make during their guilty plea colloquies and may not successfully assert any claims that contradict those statements. *See Muhammad*, 794 A.2d at 384.

Due to the bifurcated sentencing procedure employed, there is no clear answer as to which standard should apply to Culsoir's request to withdraw his guilty plea. He pled guilty to three charges on the same docket. He was immediately sentenced on one charge. He then requested to withdraw the guilty plea before the court imposed sentence on the other two charges.

We need not resolve this issue, as the record amply supports the trial court's conclusion that Culsoir was not entitled to withdraw his guilty plea under either standard. In his motion, Culsoir alleged he did not understand the interpreter's Creole translation, and he therefore failed to understand that a guilty plea would render him removable from the United States.

This allegation is directly contradicted by Culsoir's statements under oath during the guilty plea colloquy. Culsoir completed a written guilty plea colloquy, wherein he affirmed that he understood the factual basis of the offenses to which he was pleading guilty and that his lawyer had explained the elements of the criminal offenses to him. *See* Guilty Plea Colloquy, filed 8/17/16, at 1.

Thereafter, Culsoir acknowledged his understanding of the information relayed to him and indicated his wish to proceed with the guilty plea. *See id*., at 1. Culsoir further admitted that he was entering his plea voluntarily and without coercion and that he had all of the information needed in order to make the decision to enter a guilty plea. Perhaps most importantly, the written colloquy expressly informed Culsoir of the risk of deportation.

**RISK OF DEPORTATION (If an Alien)**
I know that if I am not a United States citizen, it is possible I may be deported if I plead guilty to the crime(s) charged against me.

*Id.*, at 3.

During the oral guilty plea colloquy, Culsoir testified that he was not able to read the written colloquy in English, but he understood the form as explained to him by his attorney and read to him in Haitian Creole by an interpreter. *See* N.T., Guilty Plea Hearing, 8/17/16, at 5-6. When the court asked if he signed the form of his own free will, Culsoir answered "Yes." *Id*., at 6. Culsoir was clearly notified of the risk of deportation when he was asked, "do you understand that if you are not a United States citizen, then this plea could be used – the Federal Government could try and deport you to your country of origin. Do you understand that, sir?" to which Culsoir answered, "Yes, I understand." *Id*., at 10. The court further reiterated the risk of deportation by asking again "So in other words, it's a deportable offense. Do you understand?" to which Culsoir responded "Yes." *Id*., at 11.

At no time – either in the written or oral colloquy – did Culsoir allege he could not understand the interpreter provided for him or that he was without the necessary information needed to enter a knowing plea. Culsoir expressly indicated his understanding of the crimes to which he was pleading guilty and the factual basis for his plea. Culsoir cannot now baldly recant his representations made under oath to the court.

In light of the comprehensive written and oral plea colloquy, which Culsoir fully and willingly completed, we find no fair and just reason,[1] nor a manifest injustice, to support his claim that his plea was in any manner unknowingly, involuntarily, or unintelligently given. As a result, Culsoir is due no relief on appeal.

As we find none of Culsoir's issues merit relief, we affirm the order.

Judgment of sentence affirmed.

---

[1] We note that Culsoir does not assert innocence as a reason for withdrawal of his guilty plea. Even in those cases which involve a bald assertion of innocence, a full analysis of the plausibility of the claim is required. ***See Commonwealth v. Carrasquillo***, 115 A.3d 1284, 1292 (Pa. 2015) (requiring an innocence claim be at least plausible to demonstrate a fair and just reason for presentence withdrawal of a guilty plea). Culsoir's sole contention is that he did not know he would be subject to deportation as a result of his plea, which as discussed above is belied by the record.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/19